**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50266 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-00978-JFW-2 |
| v. | |
| MARIA NELA MORENO, AKA Maria Gutierrez, AKA Mary Gutierrez, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted August 3, 2011
Pasadena, California

Before: REINHARDT and BERZON, Circuit Judges, and KENNELLY, District
Judge.[**]

Defendant–Appellant Maria Nela Moreno ("Moreno") appeals a judgment

following a jury verdict convicting her on six counts of health care fraud, in

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable Matthew F. Kennelly, District Judge for the U.S.
District Court for Northern Illinois, Chicago, sitting by designation.

violation of 18 U.S.C. §§ 1347 and 2(b), and one count of conspiracy to commit the same, in violation of 18 U.S.C. § 1349. Moreno argues that there is insufficient evidence that she had the *mens rea* necessary to convict her under any of the counts.

"Claims of insufficient evidence are reviewed de novo." *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (citation omitted). Viewing the evidence, as we must, in the light most favorable to the prosecution, we hold that the evidence was "adequate to allow [a] rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (second alteration in original, quotation marks omitted)).

"It is settled law that intent to defraud may be established by circumstantial evidence," including "from misrepresentations made by the defendant[]." *Sullivan*, 522 F.3d at 974 (citations and quotation marks omitted)). The jury heard extensive testimony regarding Moreno's misrepresentations to Medicare beneficiaries. These misrepresentations included that Medicare was giving away free power wheelchairs; that the beneficiaries should get one now even though they told her they did not need it, because Medicare was running out of money or would be cutting their benefits; and that Moreno herself worked for Medicare or the Social

2

Security Administration. Moreover, Moreno knew that nearly all of the beneficiaries did not need a wheelchair, either because they told her so or because she could see that they were ambulatory. Moreno also told an investigator prior to her arrest that she had only recruited a few beneficiaries to receive wheelchairs, and that she had not been compensated for doing so—statements contradicted by testimony that Moreno had recruited approximately 30 to 40 beneficiaries and had been paid $100 for each one. A jury could infer from Moreno's knowledge, deliberate actions, and misrepresentations that she knew that she was part of a scheme to defraud Medicare into paying for unnecessary wheelchairs. *See Sullivan*, 522 F.3d at 974. There was also evidence that Moreno sought out the opportunity to get paid for recruiting Medicare beneficiaries to apply for power wheelchairs, from which the jury could readily infer that she intentionally joined the conspiracy. Taken together, the government's evidence was sufficient to permit the jury to infer that Moreno intended to and did take part in a scheme to defraud Medicare.

**AFFIRMED.**